IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK ANTHONY LITTLE,<br>**Plaintiff,** | :<br>:<br>: |
| v. | :     **CIVL ACTION NO. 20-CV-5868** |
| JOHN PENUEL, *et al.*,<br>**Defendants.** | :<br>:<br>: |

**MEMORANDUM**

**SURRICK, J.**                                                                                  **JANUARY/*7*, 2021**

     Plaintiff Mark Anthony Little, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971), against John Penuel, Philadelphia Police Commissioner Danielle M. Outlaw, Director of the Federal Bureau of Investigations Christopher A. Wray, and Director of the JFK Behavioral Health Outpatient Counseling Center Jaimy Burke (ECF No. 1 at 2-3.) In addition to the Complaint, Little has filed a Motion for Preliminary Injunction. (ECF No. 5.) He also seeks leave to proceed *in forma pauperis*. (ECF No. 4.) For the following reasons, we will grant leave to proceed *in forma pauperis*. However, the Complaint will be dismissed. Little's request for appointment of counsel will be denied[1], and his request for issuance of a preliminary injunction will also be denied.

**I.      FACTUAL ALLEGATIONS**

---

[1] The request for counsel is included in the Complaint and as relief in the Motion for Preliminary Injunction. The motion will be denied, because as set forth in this Memorandum, Little's Complaint does not state a plausible claim. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).

The gist of Little's claims is that, since moving into a rooming house run by Defendant Penuel, he has been repeatedly raped and assaulted by Penuel and others, and that repeated reports to the Philadelphia Police and the FBI have not resulted in cessation of the attacks. The Complaint alleges that Defendant Penuel advertised a room for rent in a house in Philadelphia, and Little moved in on July 1, 2020. (ECF No. 1 at 6, 8.) On July 13, 2020, in the early morning hours, Defendant Penuel permitted other residents of the house in which Little lived to rape Little while Penuel recorded the assault. (*Id.* at 8-9.) The video was then uploaded to pornography sites for profit. (*Id.* at 9.) The Complaint alleges that Defendant Penuel arranged for other individuals living on the same block to rape Little, and that Penuel confessed to Little that he was engaging in the alleged conduct to pay his bills and live a better life. (*Id.*)

Little claims that the rapes continued, and that he was kidnapped. He alleges that his assailants used a taser to subdue him and a hypnotic command word to force him to open his door to permit the attacks to continue. (*Id.* at 10.) He alleges that the repeated attacks have caused him to suffer emotional and psychological trauma. (*Id.*)

He alleges that on August 7, 2020, he contacted Defendant Outlaw by email seeking her help, and on August 10, 2020, he received an e-mail response from Lieutenant Patrick Quinn (who is not named as a Defendant), who reportedly began the e-mail by stating, "This is not the LAPD". Little contends this was a violation of his due process and equal protection rights. (*Id.* at 10, 11.) He alleges that on November 14, 2020, he called the SVU and spoke to Detective Gonzales (not a named Defendant). (*Id.* at 18.) Detective Gonzales told Little she had turned the matter of Little's alleged kidnapping over to Detective Kelly. Detective Kelly told Little he was not going to investigate the rape allegations or the alleged kidnapping. (*Id.*) Little then contacted a supervisor at SVU.

He alleges that on October 29, 2020, he went to the Philadelphia offices of the FBI to report the crimes against him. (*Id.*) He was told there was nothing the FBI could do for him. He allegedly told the agent to whom he was speaking that he would see his boss, Defendant Wray, in federal court. Little then left the offices. (*Id.*)

He alleges that on September 25, 2020, he went to JFK Behavioral Health for an intake interview. He was interviewed by Nurse Chris Verica (not a named Defendant). Little recounted that the Los Angeles County Department of Mental Health – Skid Row Home Team had used hypnosis to force him to become a sex slave, and that he was raped, tortured, and kidnapped for profit as a result. (*Id.* at 12.) The nurse responded, "We'll see how you are doing in a couple of months." Little became angry, because he wanted immediate help – he wanted the hypnotic phrase removed from his head. The nurse then allegedly threatened to commit Little, to which he objected. At that point, Defendant Burke intervened. Little asked Burke if he was going to be involuntarily committed, but Burke allegedly would not answer. Little left the offices, threatening to take them to court for violating his civil rights. (*Id.*) Little alleges that he called Burke later, and both cursed at her and asked for counseling; Burke did not return the calls. (*Id.* at 13.) Little states that he has lodged a complaint against Burke with Patients' Rights in Philadelphia and will send a copy to Washington to exhaust his administrative remedies. (*Id.*)

Little claims that as a result of the repeated rapes and kidnappings, he has suffered emotional distress, depression, weight loss and psychological trauma. (*Id.* at 14.) He is receiving counseling at JFK Behavioral Health, and is receiving physical therapy to treat the effects of a stroke he suffered in California, reportedly while being raped in a hypnotic state. (*Id.*)

Little asserts numerous violations of the Pennsylvania Constitution as a basis for his § 1983 and *Bivens* claims. (*Id.* at 4.) In addition, he asserts violations of the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments. (*Id.* at 4-6.) Little also asserts a *Bivens* claim, based on violations of the First, Fifth, Eighth, Thirteenth, and Fourteenth Amendments. (*Id.* at 6.) He requests an opportunity to present videos and sound recordings to confirm his claims. He requests a hearing date, issuance of subpoenas for surveillance camera video that will show the rapes, access to the Attorney General's Office to prosecute those responsible for the crimes against him, and an award of $10 million against Defendant Penuel. In addition, he requests life sentences for all guilty parties. (*Id.* at 15-16.) He also requests appointment of counsel from the Attorney General's Office and an Order requiring a specialist to place him under hypnosis to demonstrate to the Court the degree of his enslavement, and to remove the hypnotic command words that are forcing his will. (*Id.* at 17.) Finally, he asks that he be paced in a safe housing situation and that he be provided help from Victims Services. (*Id.*)

## II. STANDARD OF REVIEW

We will grant Little leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Little is proceeding *pro se*,

4

the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[2] *West v. Atkins*, 487 U.S. 42, 48 (1988). "[A] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A.   Claims Against John Penuel and Jaimy Burke

According to the Complaint, Defendant Penuel is primarily responsible for coordinating and carrying out a pattern of violent criminal sexual assaults against Little with the goal of filming the assaults and publishing them to the Internet for monetary gain. However, Defendant Penuel is described only as Little's landlord. There is no allegation that Defendant Penuel was acting under color of state law. Accordingly, Little cannot state a § 1983 claim against Penuel based on the allegations in the Complaint, and the claims against Penuel must be dismissed.

With respect to Defendant Burke, Little alleges that on September 25, 2020, he went to JFK Behavioral Health for an intake interview, which was conducted by a nurse. (ECF No. 1 at 11-12.) Little related to the nurse that the Los Angeles County Department of Mental Health –

---

[2] Little invokes the Pennsylvania Constitution as the source of some of the rights he asserts were violated. However, the Pennsylvania Constitution does not provide a basis for a civil cause of action. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."). Little does not appear to be pursuing any other claims under state law and, if he were, he has not stated a basis for this Court's jurisdiction over any such claims.

Skid Row Home Team used hypnosis on him to force him to become a sex slave for profit. The nurse responded, "we'll see how you are doing in a couple of months." (*Id.* at 12.) Little became angry because he wanted immediate help. The nurse is alleged to have threatened to commit Little, to which he objected. At that point, Defendant Burke intervened. Little relates that he asked Burke if Burke intended to involuntarily commit him, but Burke would not answer. Little reportedly left, vowing to take court action for the perceived violation of his civil rights. (*Id.* at 12.) Little alleges that he later called Burke and cursed at her, while asking for counseling help. (*Id.* at 13.) Burke did not return Little's call. (*Id.*) Little alleges he has submitted a complaint to Patients' Rights in Philadelphia based on Burke's conduct. There are no further allegations in the Complaint concerning Burke. Like Penuel, Burke is not alleged to have been a state actor. Therefore, Little cannot state a plausible § 1983 claim against Burke, and Little's claims against her must be dismissed.

### B. Claims Against Police Commissioner Danielle Outlaw

According to the Complaint, Little contacted Police Commissioner Outlaw on August 7, 2020 by e-mail, seeking her assistance in stopping the violent assaults against him. (*Id.* at 10.) He alleges that he received a response not from Defendant Outlaw, but from Lieutenant Quinn, who is not a named Defendant. (*Id.* at 11.). There are no further allegations in the Complaint as to any conduct engaged in by Defendant Outlaw.

Little has sued Defendant Outlaw in both her individual and official capacities. Because Defendant Outlaw is not alleged to have engaged in any conduct giving rise to the constitutional violations alleged by Little, he has not stated a plausible claim against her in her individual capacity. *See Rode*, 845 F.2d at 1207. With respect to the official capacity claim, claims against City officials named in their official capacity are indistinguishable from claims against the City.

*See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Therefore, Little has not stated a plausible official capacity claim against Defendant Outlaw, either.

To the extent Little's claim can be read as one against the Philadelphia Police Department, it is not plausible. Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts have concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Therefore, while a municipality may be liable under § 1983, a police department, as a mere subunit of the municipality, may not. *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (per curiam) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability" citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988)); *Hadesty v. Rush Twp. Police Dep't*, Civ. A. No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016). To the extent Little seeks to pursue a claim against the Philadelphia Police Department, the Department is not a proper defendant in this case under Section 1983 and any such claim is dismissed.

To the extent Little seeks to pursue a claim for municipal liability against the City based on the conduct of its police officers, he must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Little has not identified any policy or custom that informed the conduct of Defendant Outlaw or any other police officer identified in his Complaint. As a result, he has not stated a plausible municipal liability claim.

Little's claim against Defendant Outlaw and other police officers identified in the Complaint is best understood as a claim based on the alleged refusal or failure of the officers to pursue criminal charges against Defendant Penuel and his cohorts. However, "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted); *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted); *Smith v. Friel*, Civ. A. No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties"); *Sanders v. Downs*, Civ. A. No. 08-1560, 2010 WL 817475 at *5 (M.D. Pa. Mar.9,

2010) (dismissing plaintiff's claim that police defendants failed to adequately investigate thefts at his home, since "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation") (quoting *Fuchs v. Mercer Cty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (alterations in the original); *Nedab v. Lencer*, Civ. A. No. 06-54, 2007 WL 853595 at *3 (W.D. Pa. Mar. 20, 2007) (plaintiff lacked standing to assert constitutional violation premised on state police officer's alleged failure to investigate and file criminal charges related to assault against plaintiff). Moreover, "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Little cannot state a plausible claim against Defendant Outlaw or any other police officer based on their failure to investigate or their investigation into the alleged criminal conduct of Defendant Penuel and his cohorts, and this claim must also be dismissed.

### C. Claims Against Christopher Wray

According to the Complaint, on October 29, 2020, Little contacted the FBI concerning the kidnapping and rapes he was experiencing. (ECF No. 1 at 11.) He alleges that in previous telephone calls, his claims had been brushed off, or he had been hung up on, so he went in person to the Philadelphia FBI Office. He was interviewed for a reported 45 seconds, then told there was nothing the Bureau could do for him. He asked to speak to a supervisor and was told by the agent interviewing him that he was the supervisor. Little told the agent he would not give up, and would see his boss Christopher A. Wray in federal court. He then left. (*Id.*) There are no further allegations as to Defendant Wray in the Complaint.

Little asserts his claims against Defendant Wray in his official capacity (ECF No. 1 at 3), and he invokes *Bivens* (*id.* at 6), presumably as the means of pursuing his claims against

Defendant Wray, a federal official. *See Bivens*, 403 U.S. at 392 (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and seizures); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (stating that the "purpose of *Bivens* is to deter individual federal officers from committing constitutional violations" by subjecting them to personal liability). *Bivens* provides a remedy for certain constitutional violations committed by federal actors. *See, e.g., Ynfante v. United States*, Civ. A. No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("In contrast to [Federal Tort Claims Act] actions, a *Bivens* claim can only be asserted against individual officials."). However, "[a]n action against government officials in their official capacities constitutes an action against the United States; and Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (per curiam); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Accordingly, the claims against Defendant Wray in his official capacity is a claim against the United States that must be dismissed on sovereign immunity grounds. *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (per curiam) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Bell v. Rossott*, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States). Accordingly, Little's claims against Defendant Wray are dismissed.

    **D.**    **Motion for Preliminary Injunction**

Little filed a Motion for Preliminary Injunction that was docketed on December 29, 2020. (ECF No. 5.) In his motion, Little recounts further incidents of rape and assault, and his efforts to obtain relief by contacting the police and the FBI. (ECF No. 5 at 3-8.) He identifies numerous police reports filed in response to the assaults. (*Id.* at 8.) He asserts that he has maintained consistent contact with the FBI to obtain relief. (*Id.* at 9.) He reports that he is receiving counseling at JFK Behavioral Health. (*Id.*) Little claims that he cannot move from his current housing because he is afraid that associates of Defendant Penuel might live in other, similar places, preventing his escape from the current situation. (*Id.*) He claims to suffer from emotional distress, fear, humiliation, grief, loss of sleep, inability to function and other emotional and psychological symptoms. (*Id.* at 10.) As in his Complaint, Little ascribes the majority of blame for his injuries to "the intentional wreckless [sic] acts of [Defendant] John Penuel." (*Id.* at 11.)

Little requests that the Court grant the following relief: (1) a protective order against Defendant Penuel to prohibit further rape, kidnapping, and domestic terrorism; (2) Court funding to permit Little to move into affordable safe housing; (3) subpoenas directed to Google's pornography sites to determine how many videos of sex acts performed on Little were uploaded from his current residence; (4) an Order requiring the FBI to obtain footage from surveillance cameras at the intersection of Broad Street and Washington Avenue to identify Little's assailants; (5) appointment of counsel; and (6) an Order requiring JFK Behavioral Health to investigate how the Los Angeles County Department of Mental Health – Skid Row Home Team used shock treatment and hypnosis to condition Little to commit sex acts while under hypnosis, and to remove the hypnotic commands from Little's subconscious. (*Id.* at 11-12.)

Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019). "The first two factors are prerequisites for a movant to prevail." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

In order to prevail, therefore, Little would need to establish at a minimum that he was likely to prevail on the merits of his § 1983 and *Bivens* claims. As explained above, Little has not stated plausible § 1983 or *Bivens* claims. It follows that he cannot establish that he is likely to prevail on the merits of his claims. Moreover, with respect to the threat of irreparable harm, Little has clearly not carried the burden of persuasion. He has not offered any credible basis for this Court to conclude that the issuance of extraordinary preliminary injunctive relief is

necessary to prevent immediate and irreparable injury. *See Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969) ("The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat."). Under the circumstances presented here, the law does not permit the relief requested by Little. Accordingly, we will deny Little's motion for preliminary injunction.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Little leave to proceed *in forma pauperis* but dismiss his Complaint. We will not grant leave to amend since to do so would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). Little's motion for preliminary injunction is also denied, as is his request for appointment of counsel. An appropriate Order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.

13